Joe Angelo (Bar #268542)
jangelo@gajplaw.com
Gale, Angelo, Johnson, & Patrick, P.C.
1430 Blue Oaks Blvd., Ste. 250
Roseville, CA 95747
916-290-7778 ph
916-721-2767 fax

Attorneys for Plaintiff
Jason Johnson

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION

| | |
|---|---|
| Jason Johnson<br><br>         Plaintiff,<br><br>    v.<br><br>TransUnion, LLC; Experian Information Solutions, Inc.; I.C. System, Inc., BMW of Fairfield<br><br>         Defendants. | CASE NO. 2:23-cv-0<br><br>COMPLAINT FOR DAMAGES:<br><br>1. Violation of Fair Credit Reporting Act;<br>2. Violation of California Consumer Credit Reporting Agencies Act<br>3. Violation of the Rosenthal Fair Debt Collection Practices Act<br>4. Violation of the Fair Debt Collection Practices Act |

COMES NOW Plaintiff Jason Johnson, an individual, based on information and belief, to allege as follows:

**INTRODUCTION**

1. This case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), 15 U.S.C. § 1681e(b), 15 U.S.C. § 1681i(a)(2)(A)), 15 U.S.C. § 1681i(a)(4)), 15 U.S.C. §1681i(a)(5)(A)), the California Consumer Credit Reporting Agencies Act, California Civil Code §1785.25(a), and The Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et. seq.*, and the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §1788, *et seq*.

2. Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendants in connection with their inaccurate, misleading, or incomplete reporting of Plaintiff's alleged debt with BMW of Fairfield (hereinafter "BMW").

3. Plaintiff also seeks redress for the improper and unlawful collection activities committed by I.C. System, Inc. (hereinafter "ICS") on behalf of BMW.

4. Specifically, Plaintiff seeks to hold Experian, Equifax, TransUnion, IC, and BMW liable for the inaccurate and incomplete account reporting due to the fact that Plaintiff does not owe any money to BMW and ICS.

5. Despite BMW verifying to Plaintiff that Plaintiff does not owe BMW any money and that there is no outstanding past-due balance, BMW caused ICS to report the account to Experian and TransUnion that the account is open and past-due.

6. BMW also engaged the services of ICS to continue its improper debt collection efforts.

7. In Calif. Civil Code § 1788.1(a)-(b), the California Legislature made the following findings and purpose in creating the Rosenthal Act:

> (a)(1) The banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts. Unfair or deceptive collection practices undermine the public's confidence which is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers.
>
> (2) There is need to ensure that debt collectors and debtors exercise their responsibilities to another with fairness and honesty and due regard for the rights of the other.
>
> (b) It is the purpose of this title to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts, as specified in this title.

8. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

9. Such reporting is misleading and adversely impacts Plaintiff's credit worthiness.

10. Various third parties have been exposed to the inaccurate and incomplete account information reported by ICS.

11. Plaintiff's credit has been damaged as a result of the inaccurate and misleading reporting.

12. Plaintiff has been harassed and threatened by BMW despite informing BMW that no money is owed or otherwise outstanding.

13. Creditors know that by deviating from recognized credit reporting standards consumers will have difficulty raising their credit scores and improving their credit worthiness.

## JURISDICTION & VENUE

14. Plaintiff realleges and incorporates herein by reference the allegations in each and every paragraph above as fully set forth herein.

15. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, 15 U.S.C. § 1681, and 15 U.S.C. § 1692.

16. This venue is proper pursuant to 28 U.S.C. §1391(b)(1).

17. The events that give rise to Plaintiff's causes of action occurred within the Sacramento Division of the Eastern District of California.

18. Defendant Experian is a credit reporting agency with headquarters located in the Central District of California.

19. Defendant TransUnion is a consumer reporting agency that provides consumer information regarding consumers throughout the United States, including those located in California.

20. Defendant BMW of Fairfield is an automotive dealership located in Fairfield, California.

21. Defendant ICS is a debt collection agency with its headquarters located in Minnesota. ICS offers debt collection services throughout the United States, including within the Eastern District of California.

## GENERAL ALLEGATIONS

22. Plaintiff alleges that each and every Defendant is familiar with credit reporting industry standards and subscribes thereto.

23. Plaintiff alleges that each and every Defendant understands that deviation from credit reporting industry standards can and often does result in denial of credit, higher interest rates, and prompts those making credit decisions to draw a more negative inference from the reported data than if the Defendant reported in accordance with the recognized industry standard.

24. Plaintiff alleges that all actions alleged herein by Defendants were done knowingly, intentionally, and in reckless disregard for credit reporting industry standards in an attempt to

purposefully cause Plaintiff to pay additional sums of money to the Defendants that he did not owe.

25. In the alternative, Plaintiff alleges that each and every Defendant's actions was the result of reckless policies and procedures that inevitably led to inaccurate, misleading, or incomplete credit reporting.

26. Plaintiff is an individual and is a "debtor" as defined by Cal. Civ. Code §1788.2(g).

27. At all relevant times herein, BMW was a company engaged, by the use of mail, email, and telephone, in the business of collecting a debt from Plaintiff, and a "consumer debt," as defined by Cal. Civ. Code §1788.2(f).

28. At all relevant times here, ICS was a company engaged, by the use of mail, email, and telephone, in the business of collecting a "debt" from Plaintiff as defined by 15 U.S.C. § 1692a(5).

29. At all relevant times, BMW acted as a "debt collector" within the meaning of Cal. Civ. Code §1788.2(c)

30. At all relevant times herein, ICS acted as a "debt collector" as defined by 15 U.S.C. § 1692a(6).

31. The BMW debt allegedly extended to Plaintiff was primarily for personal, family or household purposes and are therefore "debts" as that term is defined by the Cal. Civil Code § 1788.2(d) of the Rosenthal Act.

32. BMW has been attempting to collect on a debt that originated from monetary credit that was extended primarily for personal, family, or household purposes, and was therefore a "consumer credit transaction" within the meaning of Cal. Civil Code § 1788.2(3) of the Rosenthal Act at 15 U.S.C. § 1692.

33. Because Plaintiff, a natural person allegedly obligated to pay money to BMW, arising from what Plaintiff is informed and believes was a consumer credit transaction, the money allegedly owed was a "consumer debt" within the meaning of California Civil Code § 1788.2(f) of the Rosenthal Act.

34. Plaintiff is informed and believes that BMW is one who regularly collects or attempts to collect debts on behalf of themselves, and is therefore a "debt collector" within the meaning of the

Calif. Civil Code § 1788.2(c) of the Rosenthal Act, and thereby engages in "debt collection" within the meaning of the California Civil Code § 1788.2(b) of the Rosenthal Act, and is also therefore a "person" within the meaning of California Civil Code § 1788.2(g) of the Rosenthal Act.

35. In June of 2021 Plaintiff made a $5,000 deposit to BMW in order to secure the purchase of a new vehicle.

36. In December of 2021 Plaintiff's vehicle was available and he entered into a sales contract with BMW of Fairfield to purchase a 2022 BMW M3.

37. BMW did not credit the $5,000 towards the purchase price and BMW was ultimately overpaid by $5,000.

38. BMW regularly extends credit and money to interested purchasers of vehicles and subsequently collects on any outstanding debts or money that it is otherwise owed.

39. Plaintiff subsequently informed BMW of the overpayment.

40. BMW acknowledged the overpayment and admitted that Plaintiff was owed a $5,000 refund, ultimately taking steps to initiate the refund.

41. Plaintiff received the $5,000 refund from BMW sometime in 2022 and assumed that the issue was resolved.

42. However, BMW subsequently contacted Plaintiff and indicated that he still owed $5,000 towards the purchase of the vehicle and that he was expected to make a $5,000 to BMW.

43. When Plaintiff explained to BMW that there was no outstanding debt owed and that BMW was already paid in full, BMW's representative made various threats to Plaintiff and indicated that Plaintiff would pay regardless.

44. BMW continued to harass and threaten Plaintiff, primarily by placing repeated phone calls to Plaintiff's cellular telephone.

45. Specifically, BMW threatened to send Plaintiff's alleged account to collections and ruin Plaintiff's credit if Plaintiff did not pay BMW $5,000.

46. BMW continued its collection calls for several weeks, with each specific call becoming more aggressive and threatening.

47. Despite Plaintiff repeatedly explaining to BMW that there was no outstanding balance and BMW was already in receipt of the full contact price, BMW continued harassing Plaintiff and making specific threats about the consequences of not paying $5,000.

48. Concerned, frustrated, and annoyed, Plaintiff eventually blocked BMW's number from being able to contact him as the threatening phone calls were harassing Plaintiff and interfering with his day-to-day activities, job, and life in general.

49. Apparently upset that it could not extort an additional $5,000 from Plaintiff, BMW engaged the services of ICS to continue its illegal collection activity.

50. ICS began contacting Plaintiff and sending Plaintiff collection notices.

51. ICS was informed multiple times that the debt was disputed and that no money was owed to BMW.

52. However, ICS continued to send collection notices and false statements to Plaintiff regarding the BMW account.

53. In addition to ICS sending Plaintiff false collection demands, ICS began reporting the BMW account as delinquent to various credit reporting agencies.

54. ICS knew that Plaintiff did not owe BMW $5,000 yet continued to represent to various third parties that Plaintiff was in debt to BMW.

55. Plaintiff became aware of ICS's improper credit reporting tactics in late 2022.

56. ICS also failed to provide verification of the debt as required under the FDCPA.

57. However, neither BMW nor ICS updated the account information and instead continued to try and collect the $5,000 from Plaintiff, despite having actual knowledge that Plaintiff did not owe BMW (or ICS) any money.

**Plaintiff's Disputes With The Credit Reporting Agencies**

58. Annoyed and frustrated that that his disputes regarding the incorrect account information were not getting anywhere with BMW and ICS, Plaintiff disputed ICS's collection account with Experian and TransUnion in May of 2023.

59. Plaintiff's disputes informed the credit reporting agencies of the following:

    a. Experian:

6

PLAINTIFF'S COMPLAINT

     i. Informed Experian that the ICS account indicating that he owed $5,000 false

     ii. Provided verification from BMW that BMW was paid in full

  b. TransUnion:

     i. Informed Experian that the ICS account indicating that he owed $5,000 false

     ii. Provided verification from BMW that BMW was paid in full

60. Plaintiff is informed and believes that Experian and TransUnion received the and processed his disputes, and, in response, contacted ICS in order for ICS to respond.

61. Plaintiff did not receive any further information from the credit reporting agencies or any other response (such as a reinvestigation report) that provided any additional updates on the status of his pending disputes.

62. After the statutory time period elapsed and Plaintiff did not receive any response to his dispute, he ordered additional credit reports in June of 2023 to verify that the ICS account was removed from his credit profile.

63. However, Plaintiff was disappointed to learn that TransUnion and Experian did not delete the ICS account and instead continued to allow ICS to report that Plaintiff owed BMW $5,000 and that the collection account was still active.

64. Plaintiff was not provided with any additional information as to what type of inquiry or investigation the credit reporting agencies engaged in to verify that the ICS account was correct.

65. ICS acted willfully in failing to update the account information.

66. ICS's actions were not negligent but instead intentional acts done to purposefully undermine Plaintiff's ability to maintain a positive credit score and done to harm Plaintiff's credit in order to pressure him into making a payment.

67. ICS's reporting makes Plaintiff appear less creditworthy because it continues to report inaccurate and incomplete information regarding Plaintiff's account status.

68. Instead of deleting the account and informing the credit reporting agencies that the account does not belong to Plaintiff, ICS is instead transmitting information it knows to be incorrect but

refuses to update the incorrect reporting as it hopes the damage done to Plaintiff's credit score will motivate him to make a payment on the account despite a payment not being due.

69. Based on the threats made by BMW, Plaintiff believes that BMW and ICS have conspired to extort money from Plaintiff and are using negative and derogatory credit reporting to pressure Plaintiff into making the $5,000 payment.

70. Plaintiff believes ICS ignored the information provided by the Credit Reporting Agencies and intentionally reported the account as past-due with the hopes that Plaintiff would make a payment on the account to remove the derogatory account information.

71. Plaintiff's credit score has been harmed by the past-due reporting and collection notations on the account and it has significantly interfered with his ability to otherwise qualify for credit and finance a vehicle.

## FIRST CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))
Against Defendants)

**TransUnion, LLC and Experian Information Solutions, Inc. – Failure to Assure Credit Reporting Accuracy.**

72. Plaintiff realleges and incorporates herein by reference the allegations in each and every paragraph above as though fully set forth herein.

73. TransUnion and Experian violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff.

74. Had TransUnion and Experian maintained reasonable procedures to assure maximum accuracy TransUnion and Experian would never have allowed Defendant ICS to report the account as described herein.

75. As a result of TransUnion and Experian's violation of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: diminished credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

**Willfulness**

76. The violations described herein by TransUnion and Experian were willful, specifically the Credit Bureaus have intentionally and purposefully set up a system where inaccuracies are not only probable but inevitable.

77. In 2012 the FTC reported that 1 in 5 consumer credit reports contains a material error.

78. Such a finding should shock the conscience.

79. When those errors are disputed TransUnion and Experian intentionally send consumer disputes to employees who do not live within the continental United States.

80. This is intentionally done to hide and or subvert a consumer's ability to confront individuals directly responsible for approving accurate reporting.

81. Such a policy also inevitably leads to disputes going unresolved as these employees for Defendants TransUnion and Experian receive little to no training concerning how to accurately report consumer debt.

82. Instead, these employees are simply instructed to parrot whatever information a data furnisher provides regardless of whether or not that information is accurate. *See Saez v. Trans Union,* LLC, 621 F.Supp. 2d 1074, 1083, 1088 (D.Or. 2007); *Grigoryan v. Experian Info. Sols.*, Inc., 84 F. Supp. 3d 1044, 1091 (C.D. Cal. 2014); *Haykuhi Avetisyan v. Experian Info Sols.*, No. CV 14-05276-AB.

83. TransUnion and Experian employees are regularly expected to review and approve over 90 disputes per day rendering less than five minutes to review, investigate, and respond to each dispute received.

84. TransUnion and Experian have intentionally set up this system in order to undermine, hide, and otherwise frustrate consumers' ability to properly dispute and correct credit reports.

85. TransUnion and Experian also allowed ICS to report the account with inaccurate information despite specifically being told in the dispute letters why the information TransUnion and Experian allowed ICS to report was incorrect.

86. Despite the CRAs being provided with the details of the problematic ICS account reporting, including verification directly from BMW that $5,000 was not owed, TransUnion and Experian continue to allow ICS to report the account as past-due.

87. Plaintiff's dispute to TransUnion and Experian provided sufficient information to establish that Plaintiff did not owe BMW (or ICS) $5,000, however, instead of suppressing or otherwise blocking the reporting, TransUnion and Experian instead continued to allow ICS to report the false and incorrect information.

88. Consequently, Defendants TransUnion and Experian are liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

89. In the alternative, TransUnion and Experian were at least negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

90. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from TransUnion and Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**SECOND CAUSE OF ACTION**
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681s-2(b))
Against Defendants ICS, Experian, Equifax, TransUnion)
**ICS – Failure to Reinvestigate.**

91. Plaintiff realleges and incorporates herein by reference the allegations in each and every paragraph above as though fully set forth herein.

92. 15 U.S.C. §§ 1681s-2(b) and 1681i-(a)1 prohibits furnishers from providing any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate or misleading and requires a furnisher to update and or correct inaccurate information after being notified by a consumer reporting agency of a dispute by a consumer.

93. Defendant ICS violated section 1681s-2(b) by failing to conduct a reasonable investigation and re-reporting misleading and inaccurate account information.

94. The CRAs provided notice to ICS that Plaintiff was disputing the inaccurate and misleading information, but ICS failed to conduct a reasonable investigation of the information as required by the FCRA.

95. Based on Plaintiff's dispute, ICS should have known that it continued to report a debt that did not belong to Plaintiff and contained incorrect information about Plaintiff's alleged balance.

96. The most basic investigation would simply involve reading Plaintiff's dispute and reviewing the account history and its own internal notes and confirming with BMW that Plaintiff did not owe $5,000.

97. Plaintiff alleges ICS did not review well-established industry standards for credit reporting.

98. If ICS had reviewed such standards ICS would have seen its reporting was not correct and that ICS was improperly transmitting false and misleading account information to the credit reporting agencies.

99. Moreover, had ICS done any investigation whatsoever it would have uncovered that its reporting showed the account should have been deleted rather than reporting it past-due as the debt was not owed by Plaintiff.

100. The lack of investigation is unreasonable.

101. Plaintiff further alleges that ICS has not properly trained those directly investigating disputes on Metro 2 generally or credit reporting industry standards, and as such, have developed reckless policies and procedures.

**TransUnion and Experian – Failure to Reinvestigate Disputed Information.**

102. Plaintiff realleges and incorporates herein by reference the allegations in each and every paragraph above as though fully set forth herein.

103. After Plaintiff disputed the accounts mentioned above, TransUnion and Experian were required to conduct a reasonable investigation and to delete any information that was not accurate under 15 USC 1681i-(a)1.

104. TransUnion and Experian failed to conduct a reasonable investigation and failed to correct the misleading and/or inaccurate statements on the account within the statutory time frame or at all.

105. TransUnion and Experian could not have possibly done any type of reasonable investigation into this matter as Plaintiff explicitly explained that the ICS account was not delinquent and no money way owed to BMW, or, in turn, ICS.

106. Further, to support his dispute, Plaintiff provided verification that no outstanding debt was owed to BMW.

107. Plaintiff alleges that TransUnion and Experian each has its own independent duty to conduct a reasonable investigation under 15 U.S.C. § 1681i-(a)1.

108. TransUnion and Experian are not passive entities bound to report whatever information a data furnisher, such as ICS, provides.

109. Given the aforementioned, Plaintiff alleges that TransUnion and Experian can and do suppress inaccurate information from being reported when a data furnisher provides inaccurate information.

110. TransUnion and Experian can and do instruct data furnishers on how to properly report certain accounts from time to time upon request from the data furnisher.

111. TransUnion and Experian failed to conduct a reasonable investigation because any basic investigation would have included a review of Plaintiff's dispute letters.

112. TransUnion and Experian therefore did not do the most basic investigation regarding credit reporting industry standards; otherwise, the aforementioned would have been uncovered.

113. TransUnion and Experian intentionally, willfully or with reckless disregard for Plaintiff's accuracy did no investigation whatsoever, given that TransUnion and Experian's general policy is to simply parrot whatever information a data furnisher sends.

114. Such policies and procedures inherently lead to inaccurate information being reported and therefore such an investigation is wholly unreasonable and reckless, i.e. willful.

**THIRD CAUSE OF ACTION**
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))
Against Defendants)

**TransUnion and Experian – Failure to Review and Consider All Relevant Information.**

115. Plaintiff realleges and incorporates herein by reference the allegations in each and every paragraph above as though fully set forth herein.

116. TransUnion and Experian violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

117. As a result of TransUnion and Experian's violation of 15 U.S.C. § 1681i(a)(4), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress as well as financial harm.

118. The violations by TransUnion and Experian were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

119. In the alternative, TransUnion and Experian were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

120. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from TransUnion and Experian in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

**FOURTH CAUSE OF ACTION**
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))
Against Defendants)

**TransUnion and Experian– Failure to Delete Disputed and Inaccurate Information.**

121. Plaintiff realleges and incorporates herein by reference the allegations in each and every paragraph above as though fully set forth herein.

122. TransUnion and Experian violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

123. As a result of TransUnion and Experian's violation of 15 U.S.C. § 1681i(a)(5)(A), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

124. The violations by TransUnion and Experian were willful, rendering the Defendants individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

125. In the alternative, TransUnion and Experian were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

126. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from TransUnion and Experian in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

### FIFTH CAUSE OF ACTION
(Violation of California Consumer Credit Reporting Agencies Act
California Civil Code § 1785.25(a) Against Defendant ICS)

**ICS – Reporting Inaccurate Information to CRAs.**

127. Plaintiff realleges and incorporates herein by reference the allegations in each and every paragraph above as though fully set forth herein.

128. In the regular course of its business operations, ICS routinely furnish information to credit reporting agencies pertaining to transactions between Defendants and Defendants' consumers, so as to provide information to a consumer's creditworthiness, credit standing and credit capacity.

129. ICS intentionally and knowingly reported misleading and inaccurate account information to the CRAs that did not follow well-established industry standards.

130. Plaintiff alleges that ICS re-reported the information contained herein in violation of California Civil Code § 1785.25(a).

131. Plaintiff also alleges that ICS had reason to know that the information reported on Plaintiff's account and credit profile were misleading, inaccurate, and incomplete.

132. Plaintiff alleges that ICS had reason to know that by not complying with well-established industry standards lenders will draw a more negative inference with respect to Plaintiff's credit worthiness.

133. Plaintiff alleges that his dispute letter to all three credit reporting agencies, copies of which ICS received from the CRAs via an ACDV, when viewed together with the CDIA resource guide, and ICS's internal notes and records, should have provided notice to ICS of its misleading and inaccurate reporting.

134. ICS failed to notify TransUnion and Experian that the information ICS re-reported before the end of 30 business days was inaccurate, in violation of California Civil Code § 1785.25(a).

135. ICS's communication of false information, and repeated failures to investigate, and correct their inaccurate information and erroneous reporting were done knowingly, intentionally, and in reckless disregard for their duties and Plaintiff's rights.

136. As a direct and proximate result of ICS's willful and untrue communications, Plaintiff has suffered actual damages including, but not limited to, reviewing credit reports from all three consumer reporting agencies, time reviewing reports with counsel, sending demand letters, diminished credit score, denial/reduction of credit limit, and such further expenses in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**
(Violation of the Rosenthal Act)
(Cal. Civ. Code §§ 1788-1788.32)
(Against Defendant BMW)

137. Plaintiff realleges and incorporates herein by reference the allegations in each and every paragraph above as though fully set forth herein.

138. BMW attempted to collect on a debt that it knew Plaintiff did not owe.

139. BMW and its agents repeatedly threatened Plaintiff during the collection calls placed by BMW.

140. Despite Plaintiff politely informing BMW that there was no outstanding debt owed, BMW continued to harass Plaintiff and otherwise make threats if a $5,000 payment was not immediately made to BMW.

141. Despite being aware that Plaintiff did not owe BMW any money, BMW continued to attempt to harass and otherwise annoy Plaintiff into paying $5,000.

142. Defendant violated Cal. Civ. Code §1788.11 by threatening Plaintiff, using obscene language, and otherwise harass and annoy Plaintiff.

**SEVENTH CAUSE OF ACTION**
(Violation of the Rosenthal Act)
(Cal. Civ. Code §§ 1788-1788.32)
(Against Defendant BMW)

143. Plaintiff realleges and incorporates herein by reference the allegations in each and every paragraph above as though fully set forth herein.

144. BMW attempted to collect on a debt that it knew Plaintiff did not owe.

145. Despite being aware that Plaintiff did not owe BMW any money, BMW continued to attempt to collect $5,000 from Plaintiff.

146. Defendant violated Cal. Civ. Code §1788.15 by attempting to collect a debt from Plaintiff that it knew Plaintiff did not owe.

**Cal. Civ. Code § 3294**

147. BMW also acted with oppression, fraud, and/or malice, thereby entitling Plaintiff to exemplary damages in an amount according to proof and a finder of fact at trial.

148. BMW had actual knowledge that it continued to violate both state and federal collection laws as it received various notices from Plaintiff regarding the improper account balance and related collection activity and credit reporting.

149. BMW's collection activity was done with actual knowledge that Plaintiff did not owe BMW any money and that no debt existed.

150. Given BMW's knowledge of Plaintiff's account status, BMW's communications were an attempt to collect a debt in an illegal manner with a conscious disregard for Plaintiff's rights under both the Rosenthal Fair Debt Collection Practices Act and CCRAA.

151. BMW also acted with oppression, fraud, and/or malice, thereby entitling Plaintiff to punitive damages in an amount according to proof and a finder of fact at trial.

**EIGHTH CAUSE OF ACTION**
(Violation of the Rosenthal Act)
(Cal. Civ. Code §§ 1788-1788.32)
(Against Defendant BMW)

152. Plaintiff realleges and incorporates herein by reference the allegations in each and every paragraph above as though fully set forth herein.

153. BMW attempted to collect on a debt that it knew Plaintiff did not owe.

154. Despite being aware that Plaintiff did not owe BMW any money, BMW continued to attempt to collect $5,000 from Plaintiff.

155. BMW engaged in harassing and profane debt collection activities while attempting to collect or otherwise coerce Plaintiff into making a payment on a debt that was not owed.

156. Defendant violated Cal. Civ. Code §1788.17 as BMWs conduct violates various provisions of 15 U.S.C. § 1692, et. seq.

### NINTH CAUSE OF ACTION
(Violation of the FDPCA)
(15 US.C. § 1692g)
(Against Defendant ICS)

157. Plaintiff realleges and incorporates herein by reference the allegations in each and every paragraph above as though fully set forth herein.

158. ICS received notice and was otherwise informed by Plaintiff that Plaintiff did not owe BMW any money and that the collection notices were improper.

159. Plaintiff disputed the validity of the debt, thereby triggering ICS's requirement to verify the nature and balance of the account and provide that information to Plaintiff.

160. ICS failed to provide verification of the debt and instead continued to demand that Plaintiff make a payment on the account.

161. ICS's conduct was in violation of 15 U.S.C. § 1692g.

### TENTH CAUSE OF ACTION
(Violation of the FDPCA)
(15 US.C. § 1692e)
(Against Defendant ICS)

162. Plaintiff realleges and incorporates herein by reference the allegations in each and every paragraph above as though fully set forth herein.

163. ICS received notice and was otherwise informed by Plaintiff that Plaintiff did not owe BMW any money and that the collection notices were improper.

164. ICS, with knowledge that Plaintiff did not owe any money to BMW, continued to collect on the account.

165. ICS falsely claimed that Plaintiff was in debt $5,000 and that Plaintiff was obligated to make a payment on the account.

166. ICS's conduct was in violation of 15 U.S.C. § 1692e.

### DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure 38, Plaintiff hereby demands a trial by jury

for all issues of fact triable by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1. For preliminary and permanent injunctive relief to stop Defendants from engaging in the conduct described above;

2. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n and California Civil Code § 1785.31; 15 U.S.C. § 1692k;

3. An award of actual damages pursuant to California Civil Code §1788.30(a), as will be proven at trial, which are cumulative and in addition to all other remedies provided for in any other cause of action pursuant to California Civil Code §1788.32;

4. An award of statutory damages of $1,000.00 pursuant to Cal. Civ. Code §1788.30(b), which are cumulative and in addition to all other remedies provided for in California Civil Code §1788.32;

5. Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n and California Civil Code § 1785.31

6. An award of exemplary damages pursuant to California Civil Code § 3294;

7. Award attorney's fees and costs of suit incurred herein pursuant to 15 U.S.C. § 1681n & o, California Civil Code §§ 1785.31 and 1788.30(c), and 15 U.S.C. § 1692k;

8. For determination by the Court that Creditor's policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, et seq.; and

9. For determination by the Court that Creditor's policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.

**Gale, Angelo, Johnson, & Patrick, P.C.**

Dated: November 27, 2023

*/s/ Joe Angelo*
Joe Angelo
Attorney for Plaintiff